## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD WRIGHT                          :

                                              :           **Civil Action No. 11-2624**

V.                                      :

CARPENTERS PENSION AND ANNUITY          :
FUND OF PHILADELPHIA & VICINITY         :


**NORMA L. SHAPIRO, J.**                                   **MARCH 4, 2013**

### <u>MEMORANDUM</u>

Before the court are cross-motions for summary judgment arising out of Richard

Wright's ("Wright") participation in the Carpenters Pension and Annuity Fund of Philadelphia

and Vicinity ("Pension Fund" or "Fund"), a trust fund established under 29 U.S.C. §186(c)(5)

and a "multiemployer plan" and "employee benefit plan" within the meaning of 29 U.S.C.

§1002(37). There is jurisdiction under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

Wright seeks benefits amounting to approximately $9,909.54 dating back to April 1,

2010, the first day of the month next following the date on which he made his first written

application for benefits.[1] In determining the validity of Wright's argument, the court decides

three issues: (1) what version of the Plan was in effect at the time of Wright's applications for

benefits; (2) whether Wright was improperly denied benefits in his initial and/or second

application; and (2) whether the Fund's failure to grant Wright retroactive benefits was an abuse

of discretion. Wright filed his complaint on April 18, 2011. Defendant timely answered. Both

---

[1] The parties agree that benefits, if available, date back, at the earliest, to April 1, 2010. Oral Argument, Thursday April 5, 2012. The amount in controversy includes monthly payments dating from April 2010 through December 2010, for a total of approximately $9,909.54. Def.'s Response Pl.'s Mtn. S.J. 2.

parties agree the matter is to be decided on cross-motions for summary judgment. The court will

deny the plaintiff's motion for summary judgment and grant the defendant's motion.


### I.      Background

On March 27, 2007, Wright, a member of the Carpenters Local Union, was moving

drywall sheets weighing approximately 130 pounds when he sustained a work-related disabling

injury to his lumbar spine. Wright missed some work because of his condition, but eventually

returned to the job for more than one year. In September 2008, Wright's injury forced him to

cease working completely. Compl. ¶ 11-12.

Wright then applied for and received weekly benefits from the Carpenters' Health and

Welfare Fund of Philadelphia and Vicinity from the date he first became disabled. Benefits

included health and welfare weekly disability payments and health and welfare workers

compensation payments.[2]

In September 2008, Wright applied for Social Security Benefits. In a decision dated

March 9, 2010, the Social Security Administration determined that, as of September 30, 2008,

Wright met the disability criteria under Sections 216(i) and 223(d) of the Social Security Act.

On March 23, 2010, Wright submitted an application to the Fund for disabled participant

benefits under the terms of the Carpenters Pension and Annuity Plan of Philadelphia and

Vicinity (the "Plan"). [3]

---

[2] The record does not make clear when Wright stopped receiving these benefits.
[3] The parties contest the plan language in effect at the time of Wright's claim. The administrative record includes the 2002 and 2010 Plans, and language from a 2007 Plan summary document. The distinction is irrelevant to the issues in this case because, as described below, the court finds the agreements contained the same relevant language.

Under § 3.02 of the Plan, "[e]ach Active Participant who is also a Vested Participant and who becomes a Disabled Participant shall receive a Disability Retirement Pension on the first day of each month beginning on the date he or she becomes a Disabled Participant and continuing for so long as he or she remains a Disabled Participant, with the last payment made on the first day of the month in which he or she ceases to be a Disabled Participant." Plan § 3.02, 2002.

Under § 2.07, a disabled participant is defined as:

An Active Participant who ceases to be an Active Participant on account of a disability shall become a Disabled Participant if, and only if, he meets all of the following requirements:

> (1) Such Active Participant's disability arose out of disability or bodily injury which was not self-inflicted, and the Board makes a determination based on an examination of such Active Participant carried out by a doctor of medicine named by the Board and such other evidence as the Board may deem necessary, appropriate or desirable that such Active Participant is and presumably will continue to be for the remainder of his lifetime wholly prevented from engaging in any occupation or performing any work for wage or profit on account of such disability; . . . .

Plan § 2.07, 2002. Section 2.07 further provides that:

An Active Participant who becomes a Disabled Participant shall become a Disabled Participant on the latest of the following four dates:

> (1) The first day of the month following the sixth monthly anniversary of the onset of his disability;
>
> (2) The first day of the month next following the date on which he makes written application to the Pension and Annuity Fund for disability benefits;
>
> (3) The first day of the month next following the date on which he has been examined and determined to be disabled by the Board of Administration; and
>
> (4) If such Active Participant was entitled to receive weekly income benefits pursuant to the Plan of Benefits of the Health and Welfare Fund, the first day of the month next following the date on which he received his last such weekly income benefit.

3

*Id.*

In a letter dated March 26, 2010, Wright's initial application for benefits was denied for failure to meet the eligibility requirements under the terms of the Plan. According to the letter, "Section 2.07#3 of the Pension Plan of Benefits (enclosed) states that a participant must have 10 or more consecutive years of Credited Service on the date of the onset of his disability. At the time you became disabled in March 2007 you had 9 years of credited service preceding your disability claim. The Plan states you must have 10 consecutive credited years before the onset of your disability." Fund Letter, March 26, 2010.

On April 1, 2010, Wright appealed the denial; he asserted that he did, in fact, have the requisite years of service to be eligible for benefits under the Plan. By letter dated May 10, 2010, the Fund acknowledged Wright was eligible for benefits; the Fund notified Wright that, in accordance with the appeals process, he had an appointment to be examined by a Fund designated physician. Def.'s Mtn. S.J. 3. Wright was examined in May 2010; on June 1, 2010, the Fund's examining physician, Larry S. Kramer, D.O. ("Dr. Kramer"), drafted a report stating that, "[i]t is my opinion that Mr. Wright's physical/mental impairment is not severe enough so that it would prevent him from engaging in any occupation or performing any work for wage or profit on account of his disability for the remainder of his life-time."

In a letter dated June 11, 2010, Wright's appeal was denied for the medical reasons provided in Dr. Kramer's report. The Fund found that, "the [medical report from the Fund physician] showed you are not totally and permanently disabled for the remainder of your lifetime . . . . Plan regulations stipulated that in order for a person to be entitled to a Disability Pension, he must be totally disabled, unable to be employed in any occupation."

4

Wright then submitted a second appeal, acknowledged by letter dated August 17, 2010.

Def.'s Mtn. S.J. 4.  The appeal was "tabled" at Wright's request.  *Id.*  On November 4, 2010,

Wright provided the Fund with his "Notice of Decision –Fully Favorable" from the Social

Security Administration and reports from his treating physicians.  Administrative Record

("Admin. Rec.") D0046.   In accordance with the Fund's appeals procedure, Wright was

examined by Anthony J. Mela, Sr., D.O. ("Dr. Mela"), on November 23, 2010.

In December 2010, Dr. Mela provided the Fund with his independent medical evaluation

("the Mela evaluation").  In his evaluation, he states that, "within a reasonable degree of medical

certainty, it is my opinion the patient's physical impairment is severe enough that the patient will

be prevented from engaging in any occupation or performing any work for wage or profit on

account of his Disability for the remainder of his life."

Based on the Mela evaluation and other records, Wright's appeal and application for a

Disability Pension was granted effective January 2011. Def.'s. Mtn. S.J. 4.   Wright has been

receiving disability pension benefits in the amount of $1,106.06 per month since February 2,

2011. Pl's Mot. S.J. 1.   He remains totally and permanently disabled and there is no present

dispute as to his entitlement to benefits.  *Id.*

In February 2011, Wright, seeking a retroactive disability pension award for the months

prior to February 2011, appealed the determination of the date on which his benefits were

awarded.  In a letter dated March 31, 2011, the Fund denied his request.  The Fund stated that,

"[p]articipant was examined and deemed to be disabled under Plan rules in December 2010."

Fund Letter, March 31, 2011.  Wright was instructed that he had the "right to bring a civil action

in court under Section 502(a) of ERISA, 29 U.S.C. §1132(a), to overturn the adverse

determination of the Carpenters Pension and Annuity Plan." *Id.*

####    I.    Standard of Review

Under 29 U.S.C. § 1132(a)(1)(B), a participant in an ERISA benefit plan may sue in

federal court to recover benefits due under the terms of his plan.  "[A] denial of benefits

challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan

gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or

to construe the terms of the plan." *Viera v. Life Ins. Co. of North America*, 642 F.3d 407, 413 (3d

Cir. 2011), *citing Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 105 (1989).  "If the plan

gives the administrator or fiduciary discretionary authority to make eligibility determinations,

[the court] review[s] its decisions under an abuse-of-discretion (or arbitrary and capricious)

standard." *Viera,* 642 F.3d at 413 n.4 ("[i]n the ERISA context, an 'abuse-of-discretion' standard

of review is used interchangeably with an 'arbitrary and capricious' standard of review"), *citing*

*Metro. Life Co. v. Glenn,* 554 U.S. 105, 111 (2008).

The court applies the abuse of discretion standard here because section 5.01 of the Plan

unambiguously gives the fiduciary "sole and exclusive discretion."  Section 5.01 of the Plan

(2002) states:

> The Board shall have authority to control and manage the operation and administration of
> the Plan and shall be the named fiduciary of the Plan referred to in Section 402(a)(1) of
> the Employee Retirement Income Security Act of 1974.
>
> The Board shall have the right to decide in their sole and exclusive discretion all
> questions arising from or respecting the interpretation, application or administration of
> the Plan, including, but not limited to:
>
> (a) The rules of eligibility for benefits or services furnished by the Plan;
> (b) The rules for participation in the Plan;

(c) The resolution of factual disputes in benefit or beneficiary issues or disputes and such decisions by the Board shall be conclusive and binding upon all Participants, dependents and/or beneficiaries.

Plan § 5.01, 2002.

"Under the abuse-of-discretion standard, we may overturn an administrator's decision only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Viera,* 642 F.3d at 413, *citing Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011). Because benefits determinations arise in many different contexts and circumstances, the factors to be considered in reviewing a plan administrator's exercise of discretion are varied and case-specific. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 526 (3d Cir. 2009), *citing Glenn*, 554 U.S. at 116-117. "[C]ourts generally must base their review of an administrator's decision on the materials that were before the administrator when it made the challenged decision." *Howley v. Mellon Financial Corp.*, 625 F.3d 788, 793 (3d. Cir. 2010).

### IV.     Summary Judgment Standard:

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "In considering a motion for summary judgment, . . . the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

The standard by which the court decides a motion for summary judgment does not change if cross-motions are presented. *Southeastern Transportation Authority v. Pennsylvania Public Utility Commission,* 826 F.Supp. 1506, 1512 (E.D. Pa. 1993). When ruling on cross-motions for summary judgment, the court must consider the motions independently, and view the

evidence on each motion in the light most favorable to the party opposing the motion. *Williams v. Philadelphia Housing Authority,* 834 F.Supp. 794, 797 (E.D.Pa. 1993). A court must not resolve factual disputes or make credibility determinations. *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1127 (3d Cir. 1995).

V. **Plaintiff's Motion for Summary Judgment**

Wright makes two abuse of discretion-related arguments in his motion for summary judgment. He argues: (1) the Fund's rewriting of the Plan was an abuse of discretion; and (2) the Fund's unreasonable interpretation of the Plan language constitutes an abuse of discretion.

**A. Language in Effect at the Time of Wright's Denial**

Wright argues the Fund abused its discretion when it rewrote the Plan in 2010 to add a new section with the "sole intended effect to [d]eny Mr. Wright Arrearage Disability Pension Benefits." Pl.'s Mem. S.J. 5. The court must determine the language of the Plan in effect at the time Wright applied for benefits. *Cherry v. Biomedical App. of Pa., Inc.,* 397 F.Supp. 2d 609, 614 (E.D. Pa. 2005).

The 2002 version of section 2.07 was in effect at the time of Wright's initial application on March 23, 2010; the 2010 Plan was not in effect before May 1, 2010.[4] The relevant portion of section 2.07 of the 2002 Plan states:

> An Active Participant who becomes a Disabled Participant shall become a Disabled
> Participant on the latest of the following four dates:

---

[4] The Plan was not amended or restated in its entirety between 2002 and 2010. The introduction to the 2010 Plan states, "WHEREAS, the Plan has been amended from time to time and last amended in its entirety effective May 1, 2002," and "NOW, THEREFORE, the Plan is hereby amended and restated in its entirety effective May 1, 2010 to persons who are Active Participants on or after that date unless the context specifically indicates otherwise." Relevant amendments to specific sections, such as amendment No. 23 to § 2.07, are noted throughout.

(1) The first day of the month following the sixth monthly anniversary of the onset of his disability;

(2) The first day of the month next following the date on which he makes written application to the Pension and Annuity Fund for disability benefits;

(3) The first day of the month next following the date on which he has been examined and determined to be disabled by the Board of Administration; and

(4) If such Active Participant was entitled to receive weekly income benefits pursuant to the Plan of Benefits of the Health and Welfare Fund, the first day of the month next following the date on which he received his last such weekly income benefit."

Plan § 2.07, 2002.

Plaintiff argues the Plan was rewritten, and that the rewriting was an abuse of discretion, because Wright's June 11, 2010 denial letter did not contain the clause, "the first day of the month next following the date on which [a Plan participant] has been examined and determined to be disabled by the Board of Administration" (the "examined and determined clause"), as one of the options for determining the date on which an applicant would become a disabled participant. Defendant mistakenly mailed an outdated version of the Plan.

Wright did not adversely change his position because of the discrepancy between language contained in the effective Plan and the denial letter, and none of his administrative appeals were based on this distinction. Wright argues the Fund's alleged revision of the Plan evidences a procedural conflict or "irregularity" to be considered in the court's abuse of discretion analysis. Pl.'s Mtn. S.J. 7-8. But Wright's claim the Plan was rewritten with the intent to deny Wright benefits has no merit. The 2002 and 2010[5] Plans both include the

---

[5]   The 2010 plan went into effect on May 1, 2010 and includes language that is, in relevant parts, virtually unchanged from the 2002 Plan. Section 2.07(b)(1-4) states, "An Active Participant who becomes a Disabled Participant shall become a Disabled Participant on the latest of the following four dates:
     (1) The first day of the month following the sixth monthly anniversary of the onset of his or her disability.
     (2) The first day of the month next following the date on which he or she makes written application to the Plan for disability benefits.

examined and determined clause; the clause is virtually identical in the two contracts. While

there is evidence of an administrative mistake, there is no evidence Section 2.07 was rewritten

with the intent to effect Wright's claim. The court finds there is no genuine issue of material fact

concerning whether the Plan was rewritten in response to Wright's application; it was not. There

was no abuse of discretion.

## B. Fund's Interpretation of the Plan

Wright also argues the Plan's interpretation of the examined and determined clause is

unreasonable and an abuse of discretion.

## 1. Initial application

Wright's initial application for benefits was denied for failure to meet eligibility criteria.

Under the Plan, an applicant is required to have 10 or more consecutive years of Credited

Service on the date of onset of a disability to be eligible for benefits. Plan § 2.07, Amend. No.

23, as amended May 19, 2009. The Fund denied Wright's claim after erroneously determining

Wright had only nine years of consecutive service; Wright had ten years of consecutive service

at the time of his application.[6]

---

(3) The first day of the month next following the date on which he or she has been examined and determined to be disabled by the Board of Administration.

(4) If such Active Participant was entitled to receive weekly income benefits pursuant to the Plan of Benefits of the Health and Welfare Fund, the first day of the month next following the date on which he or she received his or her last such weekly income benefit.

[6] Section 2.07 of the 2002 Plan required that a disabled participant have "5 or more years of Credited Service on the date of the onset of his disability." This section was amended by Amendment 23, effective May 19, 2009, requiring that, for disability onset dates occurring on or after July 1, 2009, "[t]he Participant had both (i) 10 or more years of Credited Service and (ii) Credited Service granted for each of the 10 Plan Years preceding the Plan Year in which the onset date of their disability occurs." § 2.07 Plan, 2002, as amended by Amend. 23, May 19, 2009. Arguably, Amendment 23 does not apply to Wright because the onset date of his disability was prior to July 1, 2009, but the section's applicability is irrelevant because Wright, even though he had ten years of service at the time of his application for benefits, was otherwise erroneously denied benefits at the time of the first application.

The miscalculation appears to have been based, in part, on the ambiguity of the application questions. The application requested: (1) the date on which Wright became a member of the local union; and (2) the date on which Wright first became disabled. Wright answered, "97" and " 3/27/07," respectively. Admin. Record D0097-99. The application also requested the date on which Wright last worked, or would work, in covered employment; Wright answered this question "Sept. 08." *Id.* The Fund denied Wright's application by failing to take into consideration that Wright continued to work until September 2008, after he first became disabled.

Wright appealed the denial because he had the requisite years of service. The Fund then acknowledged the error and arranged for Dr. Kramer's medical exam.

## 2. Second application

Wright's second application was denied for medical reasons based on Dr. Kramer's report. Plan regulations stipulated that in order for a person to be entitled to a disability pension, he had to be totally disabled, i.e. "wholly prevented from engaging any occupation or performing any work," for the remainder of his lifetime. Plan § 2.07. The Fund based its second decision to deny Wright's claim on the opinion of Dr. Kramer, who found Wright was not totally and completely disabled.

Wright contends the defendant's failure to consider his treating physician's diagnosis in analyzing his application for benefits or determining the onset date of his injury demonstrated a procedural conflict. In determining whether an administrator abused its discretion, a conflict of interest is one of several factors. *Metropolitan Life Insurance v. Glenn,* 554 U.S. 105, 115-18 (2008) (an alleged conflict of interest does not change the abuse of discretion standard to one of

11

de novo review because conflicts are but one factor among many that a reviewing judge must take into account in the abuse of discretion analysis); *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 526 (3d Cir. 2009).

There was no conflict in the Fund's failure to use Wright's treating physician's reports at the time of the second denial (June 11, 2010); the Fund had not yet been provided with Wright's documents. It was not until November 4, 2010 that Wright provided the Fund with his "Notice of Decision –Fully Favorable" from the Social Security Administration and reports from his treating physicians. Pl.'s Mtn. S.J. ¶ 16; Admin. Rec. D0046.

Even if the Fund had been timely provided with the documents, it was under no obligation to give preference to a treating doctor's report in making its decision regarding benefits, nor would a failure to do so be a procedural conflict. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831 (2003)("[n]othing in [ERISA] itself, however, suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does [ERISA] impose a heightened burden of explanation on administrators when they reject a treating physician's opinion."). The Fund had the documents when it designated Wright eligible for benefits. In making this designation, the onset date of Wright's disability was irrelevant; a benefit award under the "examined and determined" clause of section 2.07 is not contingent on the onset date of an applicant's disability.

There was no procedural conflict. Under the clear language of the Plan, it was reasonable and proper for the Fund to deny Wright's second application for benefits based on medical reasons because Wright did not meet the criteria under the Plan.

### 3.  **Ambiguity**

Wright also argues the examined and determined clause is "ambiguous as to whether or not the Fund has discretion to determine the disability following the date on which a plan participant has been examined and determined to be disabled." Pl.'s Mtn. S.J. 11.  Wright contends this ambiguity should be decided in his favor.

If an ERISA plan document is ambiguous, a court must take additional steps and analyze whether the plan administrator's interpretation of the document is reasonable.  *Funk v. Cigna Group Ins., et al.,* 648 F.3d 182 (3d Cir. 2011).   Whether an ERISA plan is ambiguous is a question of law.  *In re Unisys Corp. Long-Term Disability Plan ERISA Litigation*, 97 F.3d 710, 715 (3d Cir. 1996).  An insurance contract is ambiguous where it: (1) is reasonably susceptible to different constructions, (2) is obscure in meaning through indefiniteness of expression, or (3) has a double meaning.  *Cf.  Lawson v. Fortis Ins. Co.,* 301 F.3d 159, 163 (3d Cir. 2002). Disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous.  *Cf. 12th St. Gym, Inc., v. Gen. Star Indem. Co.,* 93 F.3d 1158, 1165 (3d Cir. 1996).

Nothing in section 2.07 is susceptible to different constructions, obscure in its meaning through indefiniteness of expression, or contains a double meaning.  The Plan does not explicitly address the Fund's obligation to pay retroactive benefits after making an improper denial; this disagreement between the parties over interpretation of the contract in such an instance does not mean the contract is ambiguous.

### 4. Plan's Interpretation

A plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan. *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.,* 222 F.3d 123, 129 (3d Cir. 2000). A court may not substitute its judgment for that of a defendant in determining eligibility for plan benefits. *Id.* "Whether a claim decision is arbitrary and capricious requires a determination whether there was a reasonable basis for [the administrator's] decision, based upon the facts as known to the administrator at the time the decision was made." *Smathers v. Mult-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan,* 298 F.3d 191, 199-200 (3d Cir. 2002). As discussed, *supra*, "an administrator's decision constitutes an abuse of discretion only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law." *Howley,* 625 F.3d at 792 (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

In analyzing whether an administrator's interpretation of a plan is reasonable, a court considers the following factors: "(1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan." *Howley v. Mellon Financial Corp.,* 625 F.3d 788, 795 (3d Cir. 2010); *see also Keating v. Whitmore Mfg. Co.,* 186 F.3d 418, 422 (3d Cir. 1999)(court refused to substitute its own judgment for that of the administrator, in part, because the administrator did not "controvert the plain language and

14

purpose of the Plan"). "It is for the trustees, not the court, to choose between two reasonable alternatives." *Edwards v. Wilkes-Barre Publishing Co. Pension Trust,* 757 F.2d 52, 57 (3d Cir. 1985)(upholding district court's finding that plan's decision was not arbitrary and capricious because it was sensible and faithful to the plan's language).

The Fund's determination of the benefits start date is consistent with the unambiguous language of the examined and determined clause. Prior to Dr. Mela's evaluation, no Fund doctor had examined and determined Wright totally and completely disabled.[7] The court will not disturb the Fund's determination that retroactive benefits are not appropriate because there was a reasonable basis for the Fund's decision.

The Fund's interpretation is not clearly contrary to any language in the Plan and is reasonably consistent with the goals of the Plan; nothing about the Fund's interpretation clearly renders any language in the Plan meaningless or internally inconsistent; the Plan does not conflict with the substantive or procedural requirements of the ERISA statute; and there is no evidence of inconsistent interpretation of the relevant provision by Plan administrators.

There is no genuine issue of material fact regarding whether the Fund engaged in an abuse of discretion in interpreting the Plan. Wright fails to demonstrate the Fund's interpretation of the plan was unreasonable or an abuse of discretion. *See Celotex,* 477 U.S. at 322. Plaintiff's summary judgment will be denied.

---

[7]  In addition to the Plan language, the Fund points to 29 C.F.R. § 2560.503(h)(3(iii), requiring ERISA disability determinations to be based on medical advice. This section, concerning appeals of adverse benefit determinations under ERISA, specifies that, "in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." This section applies to disability benefit decisions. 29 C.F.R. § 2560.503-1(h)(4).

**IV.     Attorney's Fees**

To award attorney fees, a party must be a prevailing party.  *Brytus v. Sprang & Co.,* 203 F.3d 238, 242 (3d Cir. 2000); *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792 (1989)(to be a "prevailing party," a plaintiff must be able to "point to a resolution of the dispute which changes the legal relationship between itself and the defendant"). Wright will not be awarded attorney fees pursuant to Section 502(g)(1) ERISA, amended as 29 U.S.C. § 1132(g)(1) because he is not the prevailing party.


**V.     Defendant's Motion for Summary Judgment**

There is no genuine issue of material fact whether the Fund's decision not to grant retroactive benefits was an abuse of discretion.  The Fund's failure to grant plaintiff's request for retroactive benefits was not a failure to process claims solely in the interest of the beneficiaries of the Plan. The defendant is entitled to judgment as a matter of law; summary judgment in favor of defendant will be granted.  Plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.  An appropriate order follows.